UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DONTE S. HARRIS, JR.,

      Plaintiff,

      v.                            Case No. 25-cv-0762-bhl

SGT KIJEK,
CO MARTINEZ, and
CO BAAH,

      Defendants.

---

# SCREENING ORDER

---

Plaintiff Donte Harris, Jr., who is currently serving a state prison sentence at the Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Harris' motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Harris has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Harris has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $1.24. Harris' motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Harris, on October 28, 2023, at about 3:30 p.m., he started to self-harm by cutting his left forearm with a razor. About 15 minutes later, Defendant CO Martinez opened Harris' trap door to give him his dinner. Harris asserts that Martinez did not notice the blood that had oozed under Harris' door, so Harris told Martinez that he had been harming himself, but he would now like to receive medical attention. After looking at the wound, Martinez radioed the assigned sergeant, Defendant Sgt. Kijek. Harris explains that Kijek arrived at his cell, and Harris stuck his bloody arm through his trap door and stated, "I was suicidal, engaging in self-harm but now I want medical attention, I don't want to die." Harris asserts that Kijek jerked back and told Harris to pull his arm back into his cell. Harris asserts that he repeated, "I'm suicidal and need to be placed on observation and I need medical attention." Dkt. No. 1 at 5-6.

Harris asserts that after he pulled his arm back into his cell, Kijek closed the trap door and ordered Martinez to continue with meal pass. Harris asserts that Kijek also walked away, leaving no staff member in front of his cell in violation of institution policy. Harris asserts that he began to engage in further self-harm again, for about 5 to 10 minutes, until 3:55 p.m. when staff returned to his cell to take him to see a nurse. Dkt. No. 1 at 6.

According to Harris, he lied to the nurse (who is not a Defendant) about how he had cut himself, telling her that he had used the corner of his bed when he had actually flushed the razor down the toilet to avoid disciplinary action. Harris asserts that he told the nurse that he was not suicidal, but Kijek allegedly made him go on observation status anyway. Harris explains that Lt. Henrich (who is not a Defendant) arrived to escort him to observation. The lieutenant allegedly

3

told Kijek not to pack Harris' property but only to search his cell. Kijek did not search Harris' cell that day, but the next day, he allegedly ordered Martinez and Defendant Baah to search the cell *and* to pack up Harris' property, contrary to the lieutenant's orders. Dkt. No. 1 at 7-8.

Harris asserts that he returned to his cell from observation status a couple of days later, on October 30, 2023, and his property was gone. According to Harris, video shows Kijek, Martinez, and Baah packing up his property and placing it in the sergeant's cage. After several days of complaining, Harris' property was returned to him. Harris states that after he got his property back, he realized he was missing "several major property items," valued at about $300. Harris asserts that when he talked to Kijek about the missing property, Kijek said, "if it's not in your property, it more than likely got thrown away." According to Harris, his inmate complaints about the missing property were affirmed because his "property never got inventoried by the property department" and "several items came up missing while that property was in staff's possession." Dkt. No 1 at 9-10.

### THE COURT'S ANALYSIS

It has long been held that prison officials violate the Eighth Amendment if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Harris' claims differ from most failure-to-protect claims, however, in that the threat to Harris' safety came from himself, not others. While the law generally presumes that individuals, including inmates like Harris, are legally responsible for their own criminal conduct, the Seventh Circuit has concluded that mentally troubled inmates can be "deemed incompetent" and thus *not* responsible for their own self-destructive behavior in certain circumstances. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018) (explaining that "jails have a duty 'to prevent the prisoner from giving way' to the 'unusual psychological strain'

4

caused by incarceration"). In these circumstances, an inmate who intentionally engages in self-harm can pursue claims against prison or jail officials who failed to take reasonable steps to protect the inmate from his own actions. *See id.*

Based on this caselaw, the Court will allow Harris to proceed on an Eighth Amendment claim against Kijek based on allegations that he directed Martinez to leave Harris' cell front and resume handing out dinner trays, after which he walked away from Harris' cell even though Harris had stated he was suicidal and needed to be placed on observation status. Although a much closer call, the Court will also allow Harris to proceed on a deliberate indifference claim against Martinez based on allegations that he, along with Kijek, left Harris alone despite Harris' statements that he was suicidal. The Court acknowledges that Martinez radioed for help after Harris showed him his injury, an action that does not support an inference of deliberate indifference. But further development of the record is necessary to understand why Martinez complied with Kijek's instructions to leave Harris unattended despite Harris allegedly expressing his desire to continue harming himself.

Harris does not, however, state a claim against Kijek, Martinez, or Baah based on allegations that Kijek ordered his property to be packed up contrary to the lieutenant's instructions. While it is unclear why Kijek decided to act contrary to the lieutenant's orders, a violation of prison or departmental policy and procedures does not violate the Constitution and does not suggest deliberate indifference. *See Schroeder v. Sawal*, 747 F. App'x 429, 431 (7th Cir. 2019) (citing *Lewis v. Richards*, 107 F.3d 549, 553 n. 5 (7th Cir. 1997); *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996)). Nor does Harris state a claim based on allegations that his property went missing because Kijek failed to properly inventory his items. First, Harris does not allege (or even speculate) who improperly destroyed or stole his property. He alleges that the property was

5

Case 2:25-cv-00762-BHL    Filed 08/06/25    Page 5 of 9    Document 12

improperly stored in the sergeant's cage and that it "went missing," suggesting that anyone with access to the sergeant's cage could have taken the property. A person is liable for damages under §1983 only if he was personally responsible for the intentional deprivation of a constitutional right, meaning that the deprivation occurred at the person's behest or with his knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). In other words, Kijek, Martinez, and Baah are not liable for another staff member's destruction or theft of Harris' property, and Harris includes no allegations from which the Court can reasonably infer that Kijek, Martinez, or Baah is the person who destroyed or stole his property.

Regardless, according to Harris, the destruction or theft of his property was "random and unauthorized" in that it was allegedly destroyed or taken contrary to the department's policies and procedures. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Gable v. City of Chicago*, 296 F.3d 531, 540 (7th Cir. 2002). Under *Hudson*, an intentional, unauthorized deprivation of property does not violate the procedural requirements of the Due Process Clause if a meaningful post-deprivation remedy for the plaintiff's loss is available. 468 U.S. at 533. The Seventh Circuit has previously held that Wisconsin's post-deprivation procedures—the inmate-complaint system, certiorari review under state law, and tort remedies—are adequate, and Harris does not argue otherwise. *See Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996); *see also* WIS. STAT. §§ 893.35; 893.51; 893.52. Accordingly, Harris cannot state a due process claim in connection with the destruction of his property.

Nor can Harris state a retaliation claim against Kijek based on allegations that his property "went missing" after he told Kijek he was going to file an inmate complaint about him. To plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the

6

future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). But, as noted above, Harris does not allege that Kijek destroyed or took his property. He alleges only that, *prior* to informing Kijek that he intended to submit an inmate complaint, Kijek ordered that his property be moved to the sergeant's cage, where some unknown person either destroyed or took his property. As already explained, Kijek is not liable for the misconduct of others, and the Court cannot reasonably infer from Harris' allegations that Kijek is the person who took or destroyed his property.

**IT IS THEREFORE ORDERED** that Harris' motion for leave to proceed *in forma pauperis* (Dkt. No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that Harris fails to state a claim against CO Baah, so the clerk's office is directed to terminate him from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Harris' complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Sgt. Kijek and CO Martinez.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Sgt. Kijek and CO Martinez shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Harris is located.

**IT IS FURTHER ORDERED** that the agency having custody of Harris shall collect from his institution trust account the $348.76 balance of the filing fee by collecting monthly payments

7

Case 2:25-cv-00762-BHL     Filed 08/06/25     Page 7 of 9     Document 12

from Harris' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Harris is transferred to another institution, the transferring institution shall forward a copy of this Order along with Harris' remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Harris is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any

change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Harris may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on August 6, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge